1

2

3

4

5

6                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
7                                       AT SEATTLE

8    _____
                                                )
9    DAVID KUMAR, *et al.*,                      )        No. C11-1082RSL
                                                )
10                          Plaintiffs,          )
                    v.                           )        ORDER DENYING PLAINTIFFS'
11                                               )        MOTION FOR SUMMARY
     WADE M. ENTEZAR, *et al.*,                  )        JUDGMENT
12                                               )
                            Defendants.          )
13   _____)

14
             This matter comes before the Court on plaintiffs' "Motion for Summary Judgment."
15
     Dkt. # 106. Although the scope of the motion is not entirely clear, it appears plaintiffs seek a
16
     determination that Wade Entezar and Carl Van der Merwe are liable for breach of contract and
17
     breach of fiduciary duties, reserving the amount of damages for trial.[1] Defendant Van der Merwe
18
     filed an opposition, but the Court was subsequently notified that plaintiffs have settled their claims
19
     against Carl and Karin Van der Merwe. The Court has considered all of the papers submitted by the
20
     parties in order to determine whether there are genuine issues of material fact that preclude summary
21

22

23

24       [1] Because plaintiffs offer very few facts and no analysis regarding the potential liabilities of
25   Geneva Entezar, Karin Van der Merwe, Vladimir Baydovskiy, Donata Baydovskiy, Entezar
     Development Group, Inc., Quincy 132 LLC, or WC Quincy LLC, the Court has not attempted to
26   evaluate their exposure in this litigation.

     ORDER DENYING PLAINTIFFS'
     MOTION FOR SUMMARY JUDGMENT

disposition as to defendant Entezar.[2]

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of the materials in the record that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)(1)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to identify specific factual disputes that must be resolved at trial. Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1059 (9th Cir. 2012). The mere existence of a scintilla of evidence in support of the non-moving party's position will not preclude summary judgment, however, unless a reasonable jury viewing the evidence in the light most favorable to the non-moving party could return a verdict in its favor. U.S. v. Arango, 670 F.3d 988, 992 (9th Cir. 2012).

**A. Breach of Contract**

On August 15, 2006, Quincy WC, LLC (a limited liability company owned by defendant Entezar), and Quincy Development, LLC (a limited liability company owned by plaintiff Kumar), entered into a Limited Liability Company Agreement to form Quincy 132, LLC. The purpose of the venture was to acquire a piece of property in Grant County, construct the improvements necessary to obtain final plat approval, and build and sell 134 single-family homes. Plaintiffs identify four breaches of the LLC Agreement, each of which is considered below:

---

[2] Van der Merwe's request to strike all evidence obtained from the Department of Justice is DENIED.

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT          -2-

### 1. Appointment of Van der Merwe as Manager

The LLC Agreement identifies defendant Wade Entezar as the "Manager" of the company and provides that "[i]f the Manager becomes unable to fulfill his duties hereunder as a result of either death or disability, then the Manager may retain a third party to perform all duties of the Manager hereunder subject to the approval of Member David Kumar ("Member KUMAR"), which approval will not be unreasonably withheld." Dkt. # 106-2 at ¶ 1.14 and ¶ 5.4. Plaintiffs assert that Entezar breached this provision when he failed to obtain Kumar's approval before making defendant Van der Merwe a Manager. It is undisputed that Entezar did not seek Kumar's permission to make Van der Merwe a Manager of the LLC. There is, however, very little evidence from which one could conclude that Entezar actually attempted to elevate Van der Merwe to that position. Entezar was not dead or disabled as specified in ¶ 5.4 of the Agreement, and plaintiffs can point to only a single instance in the record where Van der Merwe was identified as a "Manager." Pursuant to the LLC Agreement, Entezar had the power to delegate to employees or agents of the LLC tasks necessary for the conduct of the LLC's business. Dkt. # 106-2 at ¶ 5.1. Whether Entezar simply authorized Van der Merwe to act on behalf of the LLC or whether he unilaterally appointed him as a "Manager" cannot be determined as a matter of law. Plaintiffs have not, therefore, shown that they are entitled to judgment on this part of their breach of contract claim.

### 2. Approval of Construction Contract

Although the LLC Agreement gave Entezar extensive powers and authority, it specifically reserved to Kumar the right to review and approve certain key decisions. Pursuant to ¶ 5.2.2, Entezar was required to obtain Kumar's prior approval of "[t]he final terms of the construction contract with ENTEZAR DEVELOPMENT GROUP (if applicable) or the general contractor for the Project." Plaintiffs argue that Entezar breached the LLC Agreement when Quincy 132, LLC, entered into a construction contract with Entezar Development Group EW, LLC ("EDEW"), without obtaining Kumar's approval.

The supporting evidence is equivocal and fails to show the absence of a genuine issue

of material fact. Plaintiffs rely on a draft contract dated August 1, 2006, between the LLC and

EDEW (Dkt. # 106-4, Ex. 7) and Van der Merwe's statement that a construction contract existed

(Dkt. # 106-4, Ex. 3, Interrogatory 4). Quincy 132, LLC, did not come into existence until August

15, 2006, however, and could not have executed the draft contract on which plaintiffs rely. No final

contract has been located or produced. To the extent defendants acted as if a final contract had been

executed, Van der Merwe stated that each member of the LLC, presumably including Kumar,

approved the contract with EDEW. If that were the case, there would be no breach of ¶ 5.2.2 of the

Agreement. The Court cannot resolve the ambiguities in the record in the context of this motion for

summary judgment.

### 3. Contractual Fiduciary Duty: The Design-Builder Fee

Plaintiffs argue that Entezar breached the LLC Agreement by having his construction

company, EDEW, charge $102.42 per square foot for the design and construction services it

provided. Plaintiffs do not object to the fact that Entezar was engaged in a separate and potentially

competing business venture: the LLC Agreement expressly permits such activities. Dkt. # 106-2 at

¶ 5.1. Rather, plaintiffs argue that Entezar failed to use his "reasonable best judgment consistent

with [his] fiduciary responsibility to the Company" to resolve any conflict of interest that might arise

between the competing companies. Plaintiffs argue that the LLC Agreement obligated Entezar to

provide design and construction services to Quincy 132, LLC, and that he breached his fiduciary

duties under the contract by causing EDEW to charge for those same services.

Plaintiffs' argument is based on a strained interpretation of the initial contributions

section of the LLC Agreement. Dkt. # 106-2 at ¶ 8.1.1. It is undisputed that both parties agreed to

contribute $3,000,000 to the project. Plaintiffs maintain that Entezar's $3,000,000 contribution

consisted of a $500,000 piece of property[3] and a promise to provide expertise and development

services worth $2,500,000 in the future. Under this interpretation, EDEW was obligated to provide

---

[3] The LLC Agreement states that the purchase price of the property is $550,000, not $500,000.

at least $2,500,000 in design and construction services on the project before it could begin charging the LLC. Plaintiffs therefore argue that, by charging a design-build fee at the outset, Entezar was double-dipping: he was getting a capital contribution credit for services that he was also being paid $102.42 per square foot to provide.[4]

Plaintiffs' interpretation is not the most natural reading of the initial capital contributions section of the Agreement, however. Entezar's contribution to the project involved the assignment of his right to purchase the Grant County property for $550,000. Despite the stated purchase price, the parties expressly agreed that the property's fair market value with the preliminary plat approval was $3,000,000. Entezar and his companies had obtained the preliminary plat approval prior to the effective date of the LLC Agreement. Dkt. # 106-2 at ¶ 3.1.1. Thus, a reasonable interpretation of the contract is that, at the time the LLC was founded, Entezar contributed $3,000,000 worth of real estate and past development services, thereby satisfying his initial capitalization obligations. While Entezar's company, Quincy WC, LLC, promised "to continue to contribute services to the Company relative to the development and construction of the Project" (Dkt. # 106-2 at ¶ 8.1.1), there is no indication that Quincy WC, LLC, failed to provide the promised services or that other Entezar entities were obligated to provide their services for free. Nor is there a contractual requirement that Quincy 132, LLC, hire an Entezar entity to provide the design and construction services. Had the LLC hired an unrelated general contractor, it would undoubtedly have had to pay for the services rendered out of the members' cash contributions. It is hard to imagine that the parties intended a situation where the LLC would receive a windfall (free design and construction services) if an Entezar-related entity were hired as general contractor, but would have to spend down its cash reserves if it contracted with a separate entity.

Plaintiffs have not shown that their interpretation of the initial capital contributions section reflects the intent of the parties at the time of contracting and are not entitled to summary

---

[4] Plaintiffs have not argued that the $102.42 per square foot charge was greater than the costs and expenses EDEW reasonably expected to incur in providing the design-build services for the project.

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT          -5-

judgment on this part of their breach of contract claim.

### 4. Contractual Fiduciary Duty:  Charging for Building Materials

Plaintiffs argue that Entezar breached his contractual fiduciary duties when he had Quincy 132, LLC, purchase building materials from another Entezar-related entity, Executive Building Products.  Under Washington law, however, contracting parties may make "practically any agreement they wish" regarding the scope and nature of activities in which a fiduciary may participate.  Bassan v. Investment Exchange Corp., 83 Wn.2d 922, 925 (1974).  As noted above, the parties expressly agreed that Entezar could engage in competing business ventures:  the mere fact that Quincy 132, LLC, purchased building materials from Executive Building Products would not, therefore, exceed the authorized scope of the fiduciary's conduct.  If, however, Executive Building Products made an unconsented profit from the sales, such self-dealing may run afoul of Entezar's fiduciary obligations.

Defendants have not identified any provision of the LLC Agreement authorizing Entezar to make a profit from the sale of materials or services to Quincy 132, LLC, or setting forth a formula, either express or implied, for establishing the amount of a permissible profit.  While Washington law permits profit-generating transactions to be retroactively authorized by consent of the members after the fact (see Bassan, 83 Wn.2d at 927), there is no evidence of any such post-transaction consent in the record before the Court.  Thus, the only remaining question is whether Entezar made a profit on the sales from Executive Building Products to Quincy 132, LLC.  Once again, the evidence on this key issue is equivocal.  Plaintiffs do not provide any evidence related to Executive Building Products' costs or profit margin.  The only evidence plaintiffs provide in support of this self-dealing claim are copies of a check from Quincy 132, LLC, to Executive Building Products, numerous checks from Quincy 132, LLC, to EDEW, and two checks from Executive Building Products to Entezar.  Dkt. # 106-5, Ex. 9.[5]  The fact that Quincy 132, LLC, wrote checks to

---

[5]  There are also copies of two checks made out to Entezar with no discernable payor.

service and material providers does not give rise to an inference of wrongful profit-taking or disloyalty. The distribution of cash from Executive Building Products to Entezar, however, suggests that Executive Building Products was generating a profit from its dealings with Quincy 132, LLC, and that Entezar was either siphoning those profits or benefitting from very favorable loan terms. Profit-taking is not the only inference that could be drawn from the evidence: Executive Building Products could have other sources of income and/or Entezar's loans could have been approved and/or at market rates. Plaintiffs have failed to show the absence of genuine issues of material fact regarding this aspect of their breach of contract claim.

**B. Breach of Fiduciary Duty**

In addition to his contractual obligation to resolve any conflicts of interest using his best judgment in light of his fiduciary responsibilities to the LLC, Entezar had a statutory obligation to refrain from "gross negligence, intentional misconduct, or a knowing violation of law." RCW 25.15.155. It is entirely possible that Entezar intentionally engaged in unconsented profit-taking, siphoned money from the LLC, approved the misuse of company funds for personal loans to himself and Van der Merwe, authorized fraudulent recordkeeping, and/or failed to keep reasonable and accurate records of expenditures charged to the development project. The evidence of wrongdoing is equivocal, however, and very limited. Plaintiffs have failed to show the absence of a genuine issue of material fact regarding their breach of fiduciary duty claim and are not entitled to summary judgment.

For all of the foregoing reasons, plaintiffs' motion for summary judgment is DENIED.

Dated this 24th day of January, 2014.

Robert S. Lasnik
United States District Judge